IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HILDA L. SOLIS,
SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF
LABOR

    *Plaintiff,*

vs.

LA FAMILIA CORPORATION,
ALONDRA, INC., and VICENTE de la PAZ,
SR., VICENTE de la PAZ, JR., AND
ARTURO de la PAZ,

    *Defendants.*

Case No. 10-CV-2400-EFM-GLR

**MEMORANDUM AND ORDER**

Plaintiff brings this action under the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 201 *et seq.*, alleging that Defendants violated the Act's minimum wage and overtime provisions and the Act's requirement for keeping accurate and adequate records. Before the Court is Defendants' Motion for Summary Judgment (Doc. 124) and Defendants' Motion to Strike Adam Huggins's Affidavit (Doc. 133). Because the Court finds that some of the statements in Huggins's Affidavit are hearsay under Federal Rule of Evidence 801, the Court grants in part and denies in part Defendants' Motion to Strike (Doc. 133). The Court also grants

in part and denies in part Defendants' Motion for Summary Judgment (Doc. 124), as explained more fully below.

## I.     Factual and Procedural Background[1]

Defendant La Familia Corporation ("La Familia") operates a Mexican restaurant in Olathe, Kansas, known as Chapala Mexican Restaurant.  La Familia is owned by five individuals, each with a twenty percent ownership interest.  One of the owners is Defendant Vicente de la Paz, Sr., who is also Treasurer and Secretary of La Familia.  The annual dollar volume of La Familia exceeded one million dollars in 2007, 2008, and 2009.

Defendant Alondra, Inc. ("Alondra") operated a Mexican restaurant in Gardner, Kansas, known as Chapala Mexican Restaurant until February 28, 2010.  Alondra is solely owned by Defendant Vicente de la Paz, Jr.  Defendant de la Paz, Sr., owns the building that housed the Gardner restaurant, and Defendant Arturo de la Paz worked at the Gardner restaurant.  Plaintiff contends that the Gardner restaurant uses the same menu as the Olathe restaurant because the menu for the Gardner restaurant lists the address for the Chapala Mexican Restaurant in Olathe. The menu for the Gardner restaurant also states that the restaurant serves, in addition to various food items, Pepsi products, imported and domestic beers, and margaritas and pina coladas. Alondra never had sales in excess of $500,000.00 in any one year period of time.

In April 2009, the U.S. Department of Labor began an investigation of La Familia after receiving a complaint alleging that La Familia's pay practices did not comply with the FLSA. As part of the investigation, Wage and Hour Investigator Adam Huggins interviewed de la Paz, Jr., who served as manager of the Olathe restaurant from April 1, 2007, to July 30, 2011.  During

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

his interview, de la Paz, Jr., said that he worked at the Olathe restaurant daily and that he and his father, de la Paz, Sr., are responsible for hiring and firing employees, setting rates of pay, and ordering supplies and goods. He also stated that employees do not clock in or out, that the restaurant has a time clock but it is not used, and that employees are paid based on their scheduled hours. Finally, Vicente de la Paz, Jr., told Investigator Huggins that although he and his father schedule the employees' shifts, he has to guess as to how many hours his employees work and that the hours he turns into the accountant are not correct. As part of his investigation, Huggins also met with de la Paz, Sr., interviewed the employees of the Olathe and Gardner restaurants, and conducted observations of when employees began working and took breaks.

On July 19, 2010, the Secretary of Labor filed a complaint alleging that since April 2007, Defendants La Familia, Alondra, de la Paz, Sr., de la Paz, Jr., and Arturo de la Paz willfully violated the FLSA by not keeping adequate and accurate records and by failing to pay non-exempt employees, including dishwashers, bus boys, and chip/food runners, minimum wage and overtime. Plaintiff's complaint also alleges that Defendants collectively performed activities through unified operation or common control, and for a common business purpose, which constitutes an "enterprise engaged in commerce or in the production of goods for commerce," as defined by § 203(s)(1)(A) of the Act. Plaintiff seeks back wages and a permanent injunction enjoining Defendants from violating § 15(a)(2) and § 15(a)(5) of the FLSA and preventing them from withholding payment of any unpaid compensation found by the Court to be due to Defendants' employees.

Defendants filed a Motion for Summary Judgment (Doc. 124) on July 18, 2012. Plaintiff responded on August 8, 2012, and submitted with its response, the Affidavit of Adam Huggins—

Wage and Hour's lead investigator in this case. Defendants then moved to strike the affidavit. The Court will decide both motions in this Order.

## II.     Defendants' Motion to Strike Huggins Affidavit

Defendants contend that Plaintiff cannot rely on the Affidavit of Adam Huggins to defeat their motion for summary judgment and specifically object to paragraphs 5, 6, 7, 8, 9, 11, 12, 13, 15, 16, 18, 19, 20, 21, 22, 23 and 24 of the affidavit on the basis that those paragraphs recite what Huggins was told by out of court declarants.[2] According to Defendants, because Huggins has no personal knowledge of what he alleges, the affidavit violates Rule 602 of the Federal Rules of Evidence ("Rule 602"[3]). In response, Plaintiff argues that Rule 602 does not apply because the statements are admissible as admissions against a party opponent under Federal Rule of Evidence 801(d)(2)(D).

The Court agrees with Plaintiff that Rule 602 is inapplicable in this case. Although Rule 602 requires testimony to be based upon personal knowledge, the Federal Rules of Evidence Advisory Committee stated that Rule 602 "does not govern the situation of a witness who testifies to a hearsay statement as such, if he has personal knowledge of the making of the statement. Rules 801 and 805 would be applicable."[4] Because Huggins has personal knowledge

---

[2]     The Court notes that Defendants' Motion to strike is not the proper method to address Plaintiff's affidavit. *Eatinger v. BP Am. Prod. Co.*, 2012 WL 204564, at *3, n. 17 (D. Kan. Jan. 24, 2012)(citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d ed. 2011)). The proper method is to dispute the facts relied on in the affidavit as not supported by admissible evidence. Although Defendants specifically disputed Plaintiff's additional statement of facts, they did so by primarily referring to their motion to strike. Therefore, the Court will address Defendants' motion despite this procedural error.

[3]     Federal Rule of Evidence 602 states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

[4]     Fed. R. Evid. 602 advisory committee's note.

of what the employees of La Familia and Alondra said to him, then these statements in his affidavit are admissible if they are not hearsay under Federal Rule of Evidence 801 ("Rule 801").

Defendants object to the admissibility of two types of statements in Huggins's Affidavit. The first type of statement is that made by de la Paz, Sr., and de la Paz, Jr., and is found within paragraphs 5, 6, and 7 of Huggins's Affidavit. These statements are admissible under Rule 801(d)(2)(A) as an opposing party's statement. Rule 801(d)(2)(A) states that a statement is not hearsay if "[t]he statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity." Because de la Paz, Sr., and de la Paz, Jr., are individually named defendants who are opposing parties to Plaintiff, their statements may be offered against them.

Furthermore, de la Paz, Jr.'s written statement set forth in paragraph 7 of the affidavit is also admissible against La Familia under Rule 801(d)(2)(D). Under Rule 801(d)(2)(D), a statement is not hearsay if "[t]he statement is offered against an opposing party and: (D) was made by the party's agent or employee on a matter within the scope of that relationship while it existed." Although Plaintiff contends that this exclusion applies to both managers and non-managers alike, the Tenth Circuit has applied it differently in employment disputes. In the case of an employment dispute, "an employee's statements are not attributable to his employer as a party-opponent admission in an employment dispute unless the employee was 'involved in the decisionmaking [sic] process affecting the employment action' at issue."[5] Defendant de la Paz, Jr., was manager at the Olathe restaurant from 2007 to 2011. Therefore, he made his statement to Huggins while he was an employee of La Familia. In addition, as manager, he participated in

---

[5] *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1209 (10th Cir. 2010) (quoting *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005)).

the scheduling of employees and paying wages, and thus had direct involvement in the decision-making process regarding employee work schedules and payment. Therefore, de la Paz, Jr.'s statement recited in paragraph 7 of Huggins's Affidavit is admissible.[6]

The second type of statement at issue in Huggins's Affidavit is the employee statements referred to in paragraphs 11, 12, 15, 16, 19, 20, 21, and 22. These statements are in two forms—those transcribed during Huggins's investigation and attached or referred to as exhibits to Huggins's affidavit and those merely recounted by Huggins within the affidavit itself.[7] None of these statements are admissible because they are hearsay under Rule 801.[8] The statements do not meet the exclusion set forth in Rule 801(d)(2)(D) as opposing party's statements because the employees who made the statements were not involved in the decision-making process regarding how long employees were scheduled to work and their amount of pay.[9]

Finally, the Court denies Defendants' motion with respect to paragraphs 8, 9, 13, and 18. None of these paragraphs contain statements that qualify as hearsay under Rule 801.

---

[6] Plaintiff attached de la Paz, Jr.'s written statement as Exhibit A to the Huggins's Affidavit. Exhibit A itself is not admissible because it is hearsay within hearsay under Federal Rule of Evidence 805, and Plaintiff has not set forth facts that show that the written statement itself meets the business records exception under Federal Rule of Evidence 803(6). However, regardless of the admissibility of Exhibit A to Huggins's Affidavit, Plaintiff included Vicente de la Paz, Jr.'s actual statement in Paragraph 7 of Huggins's Affidavit, and it is admissible in that form under Rule 802(d)(2)(A) and Rule 802(d)(2)(D).

[7] Defendants also attached written statements transcribed from Huggins's investigation in support of their Motion for Summary Judgment, and Plaintiff refers to these statements in paragraphs 11 and 12 of Huggins's Affidavit.

[8] The Court recognizes that the parties stipulated to the admissibility of the written employee statements in the Pretrial Order (Doc. 115). These statements, however, are hearsay within hearsay under Rule 805, and therefore, for them to be admissible, they must qualify as a hearsay exclusion or exception.

[9] *See Johnson*, 594 F.3d at 1209 ("an employee's statements are not attributable to his employer as a party-opponent admission in an employment dispute unless the employee was 'involved in the decisionmaking [sic] process affecting the employment action' at issue.' " (citation omitted)).

### III.    Defendants' Motion for Summary Judgment

#### A.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[10] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[11]  The movant bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[12]  The nonmovant must then bring forth specific facts showing a genuine issue for trial.[13]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[14]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[15]

#### B.    Analysis

Defendants contend that Plaintiff's claims are barred because:  (1) Defendants are not an "enterprise engaged in interstate commerce" under the FLSA; (2) Plaintiff cannot establish that Defendants violated the minimum wage and overtime provisions of the FLSA; (3) Plaintiff cannot establish that Defendants violated the record keeping provisions of the FLSA; and (4)

---

[10]  Fed. R. Civ. P. 56(c).

[11]  *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[12]  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[13]  *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[14]  *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[15]  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

Plaintiff's claims are barred by the statute of limitations. Defendants also argue that summary judgment should be granted in favor of individual Defendants de la Paz, Sr., de la Paz, Jr., and Arturo de la Paz because they are not "employers" under the FLSA. The Court will address each of these arguments below.

      1.     "Enterprise Engaged in Commerce"

The FLSA applies to all persons "employed in *an enterprise engaged in commerce* or in the production of goods for commerce as defined in section 3(s)(1) or (4) of this title . . ."[16] The term "enterprise engaged in commerce" means "an enterprise which has employees engaged in commerce[17] or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and has an annual gross volume of sales of not less than $500,000.00.[18]

Defendants first argue that summary judgment is appropriate because their employees do not handle, sell, or otherwise work on goods or materials that have moved in interstate commerce. Relying on *McLeod v. Threlkeld*,[19] Defendants take the narrow position that for an employee to be "engaged in commerce" under the FLSA, the employee must be directly participating in the actual movement of things in interstate commerce by (1) working for an instrumentality of interstate commerce, such as the transportation or communication industry, or (2) regularly using the instrumentalities of interstate commerce in his work, such as the regular use of interstate telephone or mail. Defendants' reliance on *McLeod*, however, is misplaced.

---

[16]   29 U.S.C. § 207(a)(1) (emphasis added).

[17]   The term "commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

[18]   29 U.S.C. § 203(s)(1)(A).

[19]   319 U.S. 491 (1943).

*McLeod* was decided in 1943, approximately 18 years before the FLSA was amended in 1961, and cases decided before the 1961 amendments are not controlling when a plaintiff asserts that enterprise coverage applies.[20]

Since the FLSA was amended in 1961, the Tenth Circuit has held that when determining whether employees handle, sell, or otherwise work in goods that have been moved in commerce, "the critical issue is whether the goods or materials handled by the employer and his employees had moved in interstate commerce. . . . 'Using' goods or materials which have moved in interstate commerce constitutes a 'handling' within the meaning of 29 U.S.C. § 203."[21] In this case, the menu for the Gardner restaurant shows that Defendants offer imported and domestic beers and soft drinks that are not manufactured in Kansas. Furthermore, Huggins observed during his investigation that the restaurants served several brands of alcohol that are not manufactured in Kansas. This evidence creates a genuine issue of material fact regarding whether Defendants and their employees handled goods that moved in interstate commerce.

Defendants next argue that summary judgment is appropriate because the Olathe and Gardner restaurants are not an "enterprise" as defined by the Act. The FLSA defines the term "enterprise" as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or organizational units."[22] Based on this definition, the following three elements must coexist before Defendants' restaurants fall within the Act's coverage: (1) related activities; (2)

---

[20] *Wirtz v. First Nat. Bank & Trust Co.*, 365 F.2d 641, 643 (10th Cir. 1966).

[21] *Donovan v. Pointon*, 717 F.2d 1320, 1322-23 (10th Cir. 1983).

[22] 29 U.S.C. § 203(r)(1).

performed through unified operations or common control; and (3) for a common business purpose.[23]

The Court finds that Defendants have not met their burden on summary judgment to show that the Olathe and Gardner restaurants are not an "enterprise" under the FLSA. Defendants argue that the restaurants are not an "enterprise" because they operated in separate cities, were owned by different individuals, and both had their own tax identifications, banking accounts, and tax returns. But, Plaintiff has come forward with specific evidence showing a genuine issue of fact regarding whether the restaurants engaged in related activities, operated under common control, and operated for a common business purpose. Specifically, with regard to related activities and common business purpose, the determinative inquiry is whether the restaurants' activities are "the same or similar."[24] The evidence shows that both restaurants offer a variety of Mexican food under the same name to consumers, which creates a genuine issue of fact on these elements. Further, although Defendants point out that the restaurants benefit two different owners, this is not dispositive of a lack of a common business purpose. "Profit motive, standing alone, does not suffice to satisfy the common-business-purpose requirement."[25]

With regard to common control, the appropriate inquiry is whether "the performance of the described activities is controlled by one person or by a number of persons, corporations, or organizational units acting together."[26] "Separate management does not destroy common

---

[23] *Wirtz*, 365 F.2d at 643; *Darling v. Frank*, 1997 WL 633962, at *2 (10th Cir. Oct. 15, 1997) (citing *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 518 (1973)).

[24] *Brennan*, 410 U.S. at 518; *Hodgson v. Univ. Club Tower, Inc.*, 466 F.2d 745, 747-48 (10th Cir. 1972).

[25] *Wirtz*, 365 F.2d at 644.

[26] 29 C.F.R. § 779.221.

control. The requirement is the power of actual control, not the exercise of that power."[27] The Court finds that there is a genuine issue of fact regarding de la Paz, Sr.'s, and de la Paz, Jr.'s, roles at the restaurants. Defendants contend that de la Paz, Jr., was only a salaried manager at the Olathe restaurant with no operational control. His statement, however, to Investigator Huggins indicates otherwise. De la Paz, Jr., stated that he had control over the scheduling, hiring, and firing of the employees of the Olathe restaurant. Furthermore, although de la Paz, Sr., had no ownership interest in the Gardner restaurant, he did own the building that housed the restaurant. Thus, the Court finds a genuine issue of fact regarding whether there was common control of the Olathe and Gardner restaurants.

        2.       Plaintiff's Minimum Wage and Overtime Claims

Defendants contend that Plaintiff cannot show that they violated the minimum wage and overtime provisions of the FLSA. The FLSA generally requires employers to pay employees for all hours worked.[28] Specifically, the FLSA sets a minimum wage that employers are required to pay certain non-exempt employees: a wage of not less than $5.85 per hour after July 23, 2007, a wage of not less than $6.55 per hour after July 24, 2008, and a wage of not less than $7.25 per hour after July 23, 2009.[29] The FLSA also mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives

---

[27] *Hodgson*, 466 F.2d at 747 (quoting *Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296, 1301 (5th Cir. 1969)).

[28] *See* 29 U.S.C. §§ 206, 207.

[29] 29 U.S.C. § 206(a)(1)(A)-(C).

compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."[30]

The United States Supreme Court set forth the burden of proof for a plaintiff for a minimum wage or overtime claim in A*nderson v. Mt. Clemens Pottery Co.*[31] In that case, the Supreme Court held that:

> a[] [plaintiff] has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.[32]

Recognizing the difficulty a plaintiff faces in calculating damages where the employer has failed to keep adequate records, the Supreme Court also noted that "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of § 11(c) of the Act."[33]

Plaintiff argues that summary judgment is not appropriate because Defendants failed to provide it with adequate records, and thus, Huggins's observations regarding the hours Defendants' employees worked, Huggins's back wage computation sheets, and Defendants' employee statements are sufficient to make a prima facie case. The Court agrees that summary judgment is not appropriate in this case, although for different reasons than those asserted by

---

[30] 29 U.S.C. § 207(a)(1).

[31] 328 U.S. 680 (1946) (superseded by statute on other grounds *Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972)).

[32] *Id*. at 688.

[33] *Id*.

Plaintiff. To overcome a motion for summary judgment, the non-moving party must come forward with "sufficient evidence requiring submission to the jury to survive summary judgment."[34] Here, Huggins's Affidavit contains evidence that Defendants' employees worked more than forty hours per week without receiving overtime compensation and that certain employees, such as the chip and food runners, were not paid minimum wage as required by the FLSA. Although this evidence is not currently admissible because the Court has found it to be hearsay under Rule 801, this evidence references witnesses who may personally testify at trial as to these allegations. Therefore, the Court cannot grant judgment as a matter of law. The Court cautions, Plaintiff, however, that to prevail at trial, it must come forward with admissible evidence to prove its claims and cannot rely solely on Huggins's, or any other Wage and Hour investigator's testimony, as to what Defendants' employees stated.

### 3. Plaintiff's Record Keeping Claim

Under 29 U.S.C. § 211(c), employers must make, keep, and preserve records of the wages, hours, and other conditions and practices of employment for each employee.[35] In addition, when employees work a fixed schedule, the employer must maintain records of any deviation from this schedule.[36] Defendants contend that they are entitled to summary judgment because both Defendants and their employees stated that work hours were recorded pursuant to a work schedule or a time clock. However, no time clock records were provided to Wage and Hour, and the written statement of de la Paz, Jr., indicates that he and his father, de la Paz, Sr., do not have a time clock at the Olathe restaurant, and that they had to guess how many hours their

---

[34] *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671-72 (10th Cir. 1998).

[35] 29 U.S.C. § 211(c).

[36] 29 C.F.R. § 516.2(c)(2).

employees work. Accordingly, the Court finds that there is a genuine issue of fact regarding whether Defendants maintained adequate records in compliance with 29 U.S.C. § 211(c).

    4.     Statute of Limitations

Plaintiff filed this case on July 19, 2010. The issue before the Court is whether the statute of limitations is two years or three years. Under 29 U.S.C. § 255(a), the statute of limitations for an FLSA claim is two years unless the violation is "willful," which means that the statute of limitations is three years.[37] A violation is "willful" under the statute if the "employer 'knew or showed a reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].' "[38]

Plaintiff asserts that Defendants' conduct was "willful" based on Arturo de la Paz's threats to fire employees for speaking with the Government and Defendants' continued employment of its workers for more than sixty hours per week after Wage and Hour held its closing conference in December 2009. Neither of these reasons, however, is sufficient to invoke a three year statute of limitations period. First, the fact that Arturo de la Paz allegedly threatened to fire employees for speaking with Wage and Hour investigators does not show a reckless disregard for whether or not Defendants' conduct violated the minimum wage and overtime provisions of the FLSA during the third year at issue. And, second, Plaintiff has not alleged any conduct that occurred in the third year that arises to the level of a willful violation. To invoke

---

[37] *See* 29 U.S.C. § 255(a) ("Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act -- (a) if the cause of action accrues on or after May 14, 1947 -- may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued;").

[38] *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1335 (10th Cir. 1998) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

the three year statute of limitations period under 29 U.S.C. § 255(a), the willful violation that gives rise to the cause of action must occur during the third year preceding the date the complaint is filed.[39] Plaintiff has not alleged any conduct by Defendants that constitutes a willful violation from July 19, 2007, to July 19, 2008, and therefore the Court grants summary judgment for Defendants on this issue. Any back wages that Plaintiff may recover at trial will be limited to the two year period preceding the filing of the Complaint.[40]

### 5. Liability of the Individual Defendants

Defendants contend that individual defendants de la Paz, Sr., de la Paz, Jr., and Arturo de la Paz are not "employers" under the FLSA, and therefore, summary judgment is appropriate for each of them. Under the FLSA, the term "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee."[41] This Court has found that the definition of "employer" includes individuals who have "operational control of significant aspects of the corporation's day to day functions."[42] In evaluating whether an individual is an employer under the FLSA, courts have considered the following factors: the individual's ownership interest in the corporation, the degree of control that the individual exhibits over the corporation's financial affairs, the individual's involvement in employee compensation decisions, the individual's control over employee work schedules or conditions of employment,

---

[39] *See* 29 U.S.C. § 255(a).

[40] 29 U.S.C. § 255(a) limits the remedy available for a continuing violation of the FLSA. *Donovan v. M&M Wrecker Service, Inc.*, 733 F.2d 83, 84-85 (10th Cir. 1984).

[41] 29 U.S.C. § 203(d).

[42] *Garcia v. Palomino, Inc.*, 738 F. Supp. 2d 1171, 1176 (D. Kan. 2010) (citations and internal quotation marks omitted).

-15-

and the individual's ability to affect an employee's employment relationship with the corporation.[43]

The Court finds that there are genuine issues of material fact as to whether de la Paz, Sr., and de la Paz, Jr. are "employers" within the meaning of the FLSA. While Defendants argue that de la Paz, Jr. and de la Paz, Sr., did not have operational control over La Familia or Alondra, de la Paz, Jr., managed the Olathe restaurant and owned the Gardner restaurant. In addition, his written statement to Investigator Huggins indicated that he and his father, de la Paz, Sr., were in charge of the hiring and firing employees at the Olathe restaurant and setting their work schedules. Therefore, the facts are disputed regarding whether these defendants had operational control over significant aspects of La Familia's and Alondra's everyday functions.

With regard to Defendant Arturo de la Paz, Plaintiff asserts that he qualifies as an "employer" under the Act because he threatened employees for speaking with Wage and Hour Investigators, managed the Gardner restaurant, hired and paid employees, and instructed employees to falsify time records. The evidence Plaintiff points to in support of these assertions is the employee statements in Huggins's Affidavit that the Court has found to be hearsay under Rule 801. But, again, because there are employee witnesses referenced in the affidavit who may personally testify as to these assertions at trial, the Court cannot find as a matter of law that Arturo de la Paz was not an "employer" under the FLSA. Therefore, the Court also declines to grant summary judgment in favor of Defendant Arturo de la Paz individually.

---

[43] *Id.* (citations omitted).

**IT IS ACCORDINGLY ORDERED** this 14th day of February, 2013, that Defendants' Motion for Summary Judgment (Doc. 124) is hereby **GRANTED IN PART** and **DENIED IN PART** and that Defendants' Motion to Strike Adam Huggins's Affidavit (Doc. 133) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**.

*/s/ Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE